Good morning, Mr. Altman Good morning, your honors. May it please the court, my name is Keith Altman and I represent Rahul Malhotra in this matter before the court today. The district court, respectfully, made an error when it concluded that Mr. Malhotra had no property or liberty interests in the matter, which is kind of a fundamental threshold to bring in any kind of a due process claim. Before we get into the merits of the property interest or liberty interest, do you agree that the district court properly dismissed the 1983 claim against the university because it's an arm of the state and not a person under 1983? We do not agree, your honors. While you cannot bring a claim for monetary compensation against a state entity, you certainly can bring a claim for injunctive relief. And Mr. Malhotra is seeking, kind of at the crux of his argument, he is seeking that the dismissal from the university be vacated. You know, tying into the liberty interest, regardless of what the university may have to tell individuals who are inquired upon, Mr. Malhotra, who is intending to go to law school, as most of the people in this court are aware, will be required to disclose the fact that he was dismissed from the university at one point in time. When it comes to character and fitness, he will be required to disclose that he was dismissed from the university at some point in time. This will lead to inquiry, what was it involving? And I cannot say exactly what would be decided, but certainly that is a very significant thing. Character and fitness, as we all know, is very intensive. They look at everything very, very carefully. So to suggest that he has no liberty interest in being free of such a mark on his record, I think is completely erroneous. Now as far as a property interest goes, Mr. Malhotra did not make a donation to the University of Illinois. He paid tuition. In exchange for paying tuition, he was made aware that he has certain rights and responsibilities, and the university also has certain rights and responsibilities, not only as an institute of higher education, but as a public institution. Where does your complaint allege specific promises that were made to your client to support a property interest? Because you correctly note that a property interest has to stem from the contract with the university, but the case law is clear that just having a contract isn't sufficient, that you have to have a specific promise to support the property interest. Where did you allege that in your complaint? Your Honor, unfortunately, I'm severely visually disabled, so I can't give you specific things, but I'm quite certain in the contract, we may be— Yeah, if you could just summarize. I don't mean to interrupt. You don't have to— Understood. Understood. Yeah. We certainly allege that he paid tuition. I mean, what was the tuition for? Was it for nothing? Gets him nothing? He has no rights? Mr. Malhotra had to sign a contract. But the case law is clear in this circuit that you don't have a property interest just by paying tuition. So, where within the Second Amendment complaint is the implied or the specific promise? Well, Your Honor, it's not just paying the tuition, there is also rights and responsibilities that are binding on the parties. Mr. Malhotra was made aware that as part of attending this institution, here are the guidelines you have to follow. He also had an understanding that the institution had guidelines, I'm entitled to certain rights and— I guess our problem is that we don't know what those undertakings were on the part of either Mr. Malhotra or the university. They're not pleaded, and there's nothing in the briefing, certainly. I mean, there must be bylaws and regulations at the university relating to matriculation toward a degree, and they may well talk about what you're talking about, but none of that's before us. Your Honor, in the briefing, I believe we refer to the Williams case, which sets forth you do have a property interest in not being suspended or expelled from the institution without a fair process, and Mr. Malhotra was denied a fair process. At its crux, there was zero evidence that Mr. Malhotra had anything to do with the party. He simply happened to be subletting a room in the fraternity house. He didn't participate in it. He didn't set it up. He had nothing to do with it. He was working in his room during the whole time of the proceeding. At some point, somebody knocked on his door because there were some issues. He tried to put a stop to the party that he had nothing to do with. There was a student who became ill. I believe he called for assistance for that student. There is zero evidence. This is not a waning and somebody made a decision in favor of, well, we're going to—you know, we think there's more evidence this way. There was no evidence presented by anyone that Mr. Malhotra had anything to do with running this party. And I don't think they can argue that just because he lives in the house, he has some inherent responsibility under those very same policies and procedures we're talking about. But getting back to Your Honor's question, I think inherently the fact is he did not receive fair due process in the processing of his complaint. He wasn't provided the information in advance he was supposed to get. Once again, there was zero evidence. You can't—you know, there's got to be something. There was literally nothing presented that showed he had any responsibility here. And that becomes a fundamental problem. He is entitled to a fair proceeding before he can be found responsible and sentenced to a one-year suspension. That's very significant to lose one year of your—you know, one year of your time at this point in your life. Mr. Williams—Mr. Altman, rather, I'm sorry. Can you describe for us what available remedies he would have had under the law of Illinois? Well, he tried to appeal the proceedings. That appeal was—he wasn't able to effectively appeal. It was just simply summarily denied. Subsequent to that, I became involved in the matter, and we tried to negotiate a resolution with the university to no avail, and ultimately, at that point, we filed suit. So we did everything— Filed suit in federal court. Filed suit in federal court. But my question is, what remedies are available in state court to Mr. Walter? Your Honor, I'm— What kind of processes he do in state court? Well, we believe he's entitled to an appeal, which he did not get, and then we think at that point, the process was completed within the university, and we attempted to work with the university, and then we ultimately filed suit. But I'm not aware of any specific process that he could have used beyond that. Most states have administrative codes and things of that nature, and I just wondered what Illinois was doing about monitoring its academic process. Your Honor, I'm not aware, but— Academic process is a real problem. I agree with you in terms of its fairness, but I'd really like to know what Illinois has done about it and whether or not you had a remedy under Illinois law. Your Honor, to be totally honest with you, I'm just not aware of whether there was any remedy within the state. But to the best of my knowledge, that issue's never been raised, and one would think that would have been raised early in the process. Anyway, I see I've chewed into some of my rebuttal time, so I'd like to sit down at this point. Of course.  We have a few minutes. Thank you, Your Honors. Mr. Land? May it please the Court, Peter Land on behalf of Defendant University of Illinois Urbana-Champaign. To your first question about Section 1983 claims against the university or against the board, clear Seventh Circuit precedent does not allow them because they're not a person under that statute. With respect to the questions about specific contractual promises and what was alleged in the complaint, there are none. There's just a reference to the concept of having paid tuition and then having some reference to procedural steps that the university takes with respect to student disciplinary matters. And again, as indicated in our briefs, that does not entitle someone to appeal. Playing procedural games here, though, don't we all know that there's more to it than all that? I mean, there's more. There are more regulations at the university that are applicable here with respect to the university's obligations toward this individual. I'm not sure I'm familiar with what you're talking about, Your Honor. They do have student disciplinary procedures. That's the student code. They did follow those here. He had an investigation, which he pleads. He talked to an investigator. He had a hearing before a subcommittee where he testified about what was at issue. I believe your brother's point is there also are regulations and undertakings with respect to being able to matriculate in due course toward a degree. I'm not familiar with what that's referring to, and I know that that was not pled in the complaint and that the motion to dismiss was focused on what was alleged. I see. How about this Williams case that your brother talked about, said that that gives you a right to, uh, gives the student a right to due process? I gather he means a constitutional right to due process. Your Honor, I, I think that the applicable case law is the Charleston case from this court and the Purdue University case, explaining what the due process protections are for students and what the requirements are with respect to a property interest or a liberty interest, and neither of those are, are met here. Um, candidly, I'm not entirely sure what the reference to the Williams case is with respect to. Can you, uh, can you perhaps, uh, enlighten me about what remedies, if any, are available in Illinois courts to a Illinois student who finds himself, uh, in this particular situation? To my understanding, someone could bring a breach of contract claim against the university in the court of claims. That's not what happened here. That's all there is, you think, and there's no other way of dealing with, there's no review of the administrative action of the university? Not that I'm aware of, Your Honor, just the student disciplinary procedures, which again, call for an investigation. And there's no kind of review of those disciplinary procedures in the state courts? I know of no automatic review in the state courts, nor of any administrative. Thank you. Thank you. That's good. You, you know, the, the issues with respect to the liberty interests that are raised in this case, um, present under the Purdue University decision, which was based where there was a liberty interest found based on a legal obligation for that student to disclose the information about the discipline. Um, that decision juxtaposed prior decisions of this court where there were not legal obligations for a student to disclose, and therefore not a liberty interest, um, and this case presents exactly that, where there is no obligation, alleged, um, legal obligation for this particular student to disclose this disciplinary, uh, experience in any graduate application or in any job application, nor was there any allegation that it would be virtually impossible for this particular student to obtain a job in his stated career, um, and that, and that's what the district court correctly decided, uh, was lacking in the pleading and led to dismissal. And if there are no further questions from Your Honors, I'll rest on our brief. Thank you. Thank you. Mr. Altman. Thank you, Your Honors. Very briefly, I, I want to address the, the person situation. One U.S. one defines what a person means, and it's very, very expansive. I just had this up before the Supreme Court on a couple of cases a couple of months ago. So I just want to point out that, um, you know, Brother Counsel's talking about they're not a person. Well, they are a person under one U.S. one. I also want to emphasize the fact that this is a motion to dismiss. This is not a motion for summary judgment. That means do we raise plausible facts. Brother Counsel wants to say that it seems that there's no evidence that, um, he would have a problem with his liberty interest. But the fact is, is that we have alleged that he would have to disclose if asked that he was dismissed from school. Certainly that is sufficient that the motion to dismiss stage, um, respectfully that the district court, I don't think could make the determination that that would not have an interest. And, and assuredly, if Mr. Malholtra were to disclose to a law school that he was applying to or to a, and you are asked, have you ever been found responsible for disciplinary violation at an institute of higher education, that's a routine question that is asked amongst applicants. Certainly when dealing with the, uh, dealing with character and fitness, you have to disclose everything. I mean, it's for the character and fitness people to describe and decide what the weight of that information is. But at a motion to dismiss stage, I think the court overstepped its bounds by concluding that could never happen. It is certainly pled in the complaint that he would be forced to school to disclose this. And coming back to, you know, the concept of exactly what was promised, you know, the, the institution can't have it both ways. They can't say to Mr. Malholtra, we're going to hold you accountable under our student conduct code. And then at the same time say, but we don't really have any policies and procedures that dictate what we owe you in that regard. So respectfully, we request that this court, um, find that the district court erred and remand the case back to the district court for further proceedings. Thank you very much, your honors. Thank you. The case will be taken under advisement.